1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

13

14

15

16

17

18

19

DAVID ARZATE,

              Petitioner,

   v.

KIM HOLLAND, Warden,

              Respondent.

)
)
)
)
)
)
)
)
)
)
)

1:09-cv-02156 MJS HC

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

20

21

22

23

24

25

26

     Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Kim Holland, as warden of California Correctional Institution, Tehachapi, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented in this action by Kathleen Anne McKenna, Esq., of the Office of the Attorney General for the State of California. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 3, 8.)

27

**I.    PROCEDURAL BACKGROUND**

28

     Petitioner is currently a state prisoner pursuant to a judgment of the Superior Court of

California, County of Stanislaus, following his conviction by jury trial on March 28, 2007, for attempted murder, assault with a firearm, participation in a street gang, and unlawful possession of a firearm. (CT[1], Vol. 1 at 249-50.) On June 4, 2007, the trial court sentenced Petitioner to serve forty-five (45) years to life plus fourteen years in state prison. (Id.)

Petitioner filed a direct appeal which was denied in a reasoned decision by the California Court of Appeal, Fifth Appellate District on April 2, 2009. (Lodged Doc. 5.) While the conviction was affirmed, the appellate court corrected the sentence to twenty five (25) years to life plus six years. (Id.) The California Supreme Court denied review on July 15, 2009. (Lodged Doc. 9.) Petitioner did not seek post-conviction collateral relief in state court.

Petitioner filed the instant federal habeas petition on December 11, 2009. (Pet., ECF No. 1.)  Petitioner raises the following seven claims for relief:

1.) That there was insufficient evidence to convict Petitioner of active participation in a criminal street gang;

2.) The trial court improperly denied his objections to gang expert testimony;

3.) That the trial court improperly allowed prejudicial and inflammatory evidence linking Petitioner to a planned 2004 killing and an attempt to shoot an expert witness;

4.) That the trial court erred in admitting evidence connecting the Norteno street gang to the Mexican Mafia prison gang;

5.) The trial court failed to give a limiting instruction regarding gang evidence, and Petitioner's counsel was ineffective for failing to request the instruction;

6.) The trial court improperly denied his claim of jury misconduct; and

7.) The trial court improperly denied his motion for substitution of new trial counsel.

Respondent filed an answer to the petition on August 2, 2010, and Petitioner filed a traverse on August 19, 2010. (Answer & Traverse, ECF Nos. 9, 11.)

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

1  **II.    FACTUAL BACKGROUND**[2]

2          Kari Moncibaiz and her estranged husband, Joel Moncibaiz, were arguing
3  in the parking lot of their mutual place of employment. FN2 Defendant, who was
   dating Kari and by whom Kari was then pregnant, happened to call Kari on her
4  cellular telephone while the argument was in progress. Joel took the telephone
   and exchanged taunts and heated words with defendant. After the call, Kari
5  drove away.

6          FN 2 To avoid confusion, at times we will refer to Kari and Joel Moncibaiz by
   their given names.

7          A short time later, Kari returned to the parking lot, followed by defendant
   and two other men in a separate car. Defendant came out of the car, and he and
8  Joel immediately began fighting. During a lull in the action, Kari approached
   defendant, lifted his shirt, and took a handgun from defendant's waistband. She
9  returned to her car and defendant and Joel resumed their fight.

10         Joel, a much larger man than defendant, was getting the better of
   defendant in the fight. Defendant broke off the fight and went to Kari's car,
11 entering on the passenger side. He and Kari struggled over the gun, then Kari
   threw the gun out the window. Defendant got out of the car and recovered the
12 gun.

13         Defendant pointed the gun at Joel, who was then 20 to 25 feet from him.
   Defendant began firing. Joel turned and ran in a zig-zag motion until he fell
14 down, unharmed. In all, defendant fired about seven times.

15         Joel stood up again and began yelling. Kari left in her car, and defendant
   and the other two men left in their car.

16
   People v. Arzate, 2009 Cal. App. Unpub. LEXIS 2667, *2-*3 (2009).
17
   **III.   DISCUSSION**
18
   **A.    Jurisdiction**
19
   Relief by way of a petition for writ of habeas corpus extends to a person in custody
20
   pursuant to the judgment of a state court if the custody is in violation of the Constitution or
21
   laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams
22
   v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner's claims involve those guaranteed by the
23
   U.S. Constitution and arise from the Kings County Superior Court of California, which is
24
   located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the
25
   Court has jurisdiction over the action.
26

27  _____

28         [2]The factual background is taken from the opinion of the state appellate court and is presumed correct.
   28 U.S.C. § 2254(e)(1).

**B.    Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**1.    Contrary to or an Unreasonable Application of Federal Law**

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405 06).  "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70 71 (2003).  A state court decision will involve an "unreasonable application of "federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409 10); Woodford v. Visciotti, 537 U.S. 19, 24 25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an incorrect application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case by case determinations."  Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

## 2.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784 85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or

merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  Id.  To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786 87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings."  Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

1    not engage in a separate analysis applying the <u>Brecht</u> standard.  <u>Avila v. Galaza</u>, 297 F.3d

2    911, 918, n. 7 (2002).  <u>Musalin v. Lamarque</u>, 555 F.3d at 834.

3

4    **IV.    REVIEW OF PETITION**

5        **A.    Claim One: Insufficient Evidence of Active Participation in a Criminal
            Street Gang**

6

7        Petitioner claims that there was insufficient evidence to support his conviction for

8    violating California Penal Code § 186.22(a), which prohibits active participation in a criminal

9    street gang. Specifically, Petitioner asserts that the crime of conviction must be gang related

10   and that there was insufficient evidence to show that Petitioner aided or abetted fellow gang

11   members. (Pet. at 5.)

12             1.    Relevant State Court Decision

13       On Petitioner's direct appeal, the Fifth District Court of Appeal denied Petitioner's claim

14   in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition

15   for review. Based on the "look-though" doctrine of <u>Ylst v. Nunnemaker</u>, the Fifth District Court

16   of Appeal decision is considered to be adapted by the California Supreme Court and the

17   operative state court decision for this claim. 501 U.S. at 803. The court denied the claim for

18   the following reasons:

19           Defendant was charged in count III with violation of section 186.22,
        subdivision (a). That subdivision states, in relevant part: "Any person who
20       actively participates in any criminal street gang with knowledge that its members
        engage in or have engaged in a pattern of criminal gang activity, and who
21       willfully promotes, furthers, or assists in any felonious criminal conduct by
        members of that gang, shall be punished …." Defendant contends both that the
22       evidence was insufficient to permit conviction of this crime and that the jury was
        inadequately instructed concerning the crime.

23       A. Sufficiency of the Evidence

24           Briefly stated, there are three elements of this crime: First, the defendant
        must actively participate in a criminal street gang (the "active participation"
25       element). Second, defendant must know at the time of such participation that
        members of the gang have or are engaged in a pattern of criminal gang activity
26       (the "pattern of activity" element). Third, the defendant must willfully promote,
        further, or assist felonious conduct by members of the gang (the "willfully
27       assisted" element). Each of these elements is the subject of lengthy explanation
        in the pattern jury instruction for this crime. (See Judicial Council of California
28       Criminal Jury Instructions (Fall 2008 ed.) CALCRIM No. 1400.) Perhaps, then,

it is not surprising that the parties do not agree what evidence is sufficient to constitute each element. We will parse the instruction and case law only to the extent necessary to resolve the present case.

Defendant contends the prosecution failed to prove the offense because (1) there was no evidence the current crimes were gang related, which defendant contends is required to establish the "active participation" element in the present circumstances; (2) the prosecution failed to prove the necessary pattern of gang activity; and (3) there was no evidence defendant aided and abetted felony conduct by fellow gang members, which defendant contends is necessary to establish the "willfully assisted" element. Each of defendant's contentions is contradicted by the record or is contrary to established law.

Among the other requirements for a criminal street gang is a requirement that the members of the gang engage in a pattern of criminal activity. The statute establishes that such a "pattern" requires, at a minimum, that gang members have committed two or more crimes listed in the statute within a particular timeframe. (People v. Gardeley (1996) 14 Cal.4th 605, 610.) There is no requirement that these crimes be "gang related" beyond the requirement that the crimes be committed by gang members. (Id. at p. 621.)

Defendant contends the evidence in the present case is insufficient to show that one of the "pattern" crimes established by the prosecution, sale of methamphetamine, was committed by a gang member. (See § 186.22, subd. (e)(4).) He claims the gang expert never testified that the drug dealer, Helton, was a member of defendant's Norteno gang. To the contrary, however, the expert testified explicitly that, for reasons he explained at some length, Helton was a Norteno.

The second crimes relied on by the prosecution to establish the "pattern of criminal gang activity" were the crimes charged in the present case, assault with a firearm and attempted murder. (See § 186.22, subds. (e)(1), (e)(3).) Defendant contends the statute creates liability only for one who aids and abets the "pattern" crimes, not for a direct perpetrator of those crimes. This court and all others have rejected that contention. (See People v. Salcido (2007) 149 Cal.App.4th 356, 367-369 (Salcido).) The evidence was sufficient to establish the "pattern of activity" element.

Defendant contends, notwithstanding the discussion in Salcido, supra, 149 Cal.App.4th at pages 367-369, that this court and others "appear[] to recognize that in order to square with the express purposes of the lawmakers, where a Penal Code section 186.22, subdivision (a) conviction is sought against a direct perpetrator of a crime, that crime must be [] 'gang-related,' i.e., a crime intended by the defendant to promote, further and assist the gang in its primary activities" in order to establish "active participation" in the gang. Defendant's conclusion is based on the same logical fallacy asserted by the appellant in Salcido: while a gang-related offense is sufficient to support section 186.22, subdivision (a) liability, it is not necessary that the offense be gang related. (See Salcido, supra, 149 Cal.App.4th at p. 367.)FN5 In other words, it is true that the crimes in Salcido and other cases happened to be gang related (and, consequently, resulted both in substantive liability under section 186.22, subdivision (a) and an enhancement of punishment under section 186.22, subdivision (b)), but there is nothing in Salcido or in the language of section 186.22 that requires that conjunction. The statute merely requires that the defendant promote, further, or assist in "any felonious criminal conduct by

1
2
3

members of that gang." (§ 186.22, subd. (a).) Simply put, defendant, a gang member, promoted felonious conduct by committing the felony. That is sufficient to prove the "willfully assisted" element of the offense (see Salcido, supra, 149 Cal.App.4th at pp. 367-368) and to satisfy the challenged aspect of the "active participation" element.

4
5
6
7

FN5 Ignoring the discussion in Salcido, defendant attempts to rely on the earlier Supreme Court decision in People v. Castenada (2000) 23 Cal.4th 743, 750. As stated in Salcido, "Castenada discussed the crime of gang participation in terms of aiding and abetting. We clarified in [People v. Ngoun (2001) 88 Cal.App.4th 432, 436] that section 186.22, subdivision (a), also applies to a direct perpetrator's gang-related criminal conduct." (Salcido, supra, 149 Cal.App.4th at p. 367.) As explained in the text, it also applies to a gang member's direct criminal conduct.

8
9

Arzate, 2009 Cal. App. Unpub. LEXIS 2667 at *25-*30.

10

        2.    Analysis

11
12
13
14
15
16
17

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only by proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. Jackson v. Virginia, 443 U.S. 307, 315-16 (1979). Under the Jackson standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

18
19
20
21
22
23

In applying the Jackson standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16. A federal court sitting in habeas review is "bound to accept a state court's interpretation of state law, except in the highly unusual case in which the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a constitutional violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

24
25
26
27
28

The gravamen of a violation of Penal Code section 186.22(a) "is active participation in a street gang." People v. Albillar, 51 Cal. 4th 47, 55 (2010). The elements of the offense are: (1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any

1    felonious criminal conduct by members of that gang. People v. Lamas, 42 Cal. 4th 516,

2    523(2007). "All three elements can be satisfied without proof" that the promoted crime was

3    gang-related. Albillar, 51 Cal. 4th at 56. The state supreme court's "authoritative interpretation

4    of section 186.22" must be applied by this Court. Emery v. Clark, 643 F.3d 1210, 1215-16 (9th

5    Cir. 2011) ("Emery II").[3]

6         A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of

7    the evidence used to obtain a state conviction on federal due process grounds." Juan H. v.

8    Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). All evidence must be considered in the light most

9    favorable to the prosecution. Jackson, 443 U.S. at 319. Furthermore, under AEDPA, federal

10   courts must "apply the standards of Jackson with an additional layer of deference." Juan H.,

11   408 F.3d at 1274; Smith v. Mitchell, 624 F.3d 1235, 1239 (9th Cir. 2010) (observing that

12   AEDPA combined with Jackson standard requires "double layer of deference").

13        Here, the Court of Appeal considered Petitioner's challenge to the sufficiency of the

14   evidence for the gang conviction on direct appeal. The appellate court did not expressly

15   identify Jackson or a state court analogue as the governing standard of due process review.

16   However, the court explained the elements of the gang charge under Section 186.22(a) and

17   clearly reviewed the evidence underlying that conviction in the light most favorable to the

18   prosecution. The Court therefore finds that the appellate court analysis was based on the

19   correct federal legal standard.

20        Petitioner contends that insufficient evidence was shown to support the charged offense

21   because the prosecution did not show that the instant offense was gang related. Instead, he

22   argues that the factual circumstances show that the crime was based solely on animosity

23   between Petitioner and the victim, who was the ex-husband of Petitioner's girlfriend. As stated

24

25        [3] Until recently, the interpretation of this statute on habeas review in the Ninth Circuit was in flux. In Emery
     v. Clark, 604 F.3d 1102 (9th Cir. 2010) ("Emery I"), the Ninth Circuit certified a series of questions to the state
26   supreme court regarding the specific intent requirement under another provision of section 186.22. The California
     Supreme Court decision in Albillar addressed the elements of the substantive gang participation offense (section
27   186.22(a)) and a gang activity enhancement (section 186.22(b)(1)). The Albillar Court expressly noted that its
     decision conflicted with various Ninth Circuit panels.
28        The Albillar decision did not answer the specific questions listed in Emery I. Nevertheless, the Emery II
     Court acknowledged that the state court definitively resolved the elements and mental intent necessary to commit
     the substantive offense of active street gang participation.

1   above, the California Supreme Court has held that section 186.22(a) does not require a

2   showing that the crime at issue was gang related.  See Albillar, 51 Cal. 4th at 66. ("[W]e

3   determined that... statutory language in section 186.22(a), which applies to an active

4   participant in a gang who 'willfully promotes, furthers, or assists in any felonious criminal

5   conduct by members of that gang,' was not ambiguous and extended to any felonious criminal

6   conduct, not just felonious gang-related conduct.") Furthermore, in light of the statutory

7   construction of section 186.22, it is logical that subsection (a) does not require gang related

8   conduct in light of the provisions of subsection (b) which do:

9           All three elements can be satisfied without proof the felonious criminal
        conduct promoted, furthered, or assisted was gang related.

10

11          The Legislature clearly knew how to draft language limiting the nature of
        the criminal conduct promoted, furthered, or assisted and could have included
        such language had it desired to so limit the reach of section 186.22(a). Indeed,

12      the Legislature did exactly that in the subdivision immediately following—i.e.,
        section 186.22(b)(1), which provides for an enhanced sentence for any person

13      who is convicted of a felony committed *for the benefit of, at the direction of, or
        in association with any criminal street gang*, with the specific intent to promote,

14      further, or assist in any criminal conduct by gang members. When different
        words are used in contemporaneously enacted, adjoining subdivisions of a

15      statute, the inference is compelling that a difference in meaning was intended.

16   Albillar, 51 Cal. 4th 47 at 56 (internal citations omitted.).

17          Here, Petitioner was charged with both participation in a criminal street gang (section

18   186.22(a)) and criminal enhancements that the crime was committed for the benefit of, at the

19   direction of, or in association of a criminal street gang (section 186.22(b)(1)). "However, the

20   jury found not true the criminal street gang enhancement allegations." Arzate, 2009 Cal. App.

21   Unpub. LEXIS 2667 at *4. The state was unable to prove that the crime was committed for the

22   furtherance of the criminal street gang, but that is not an element of the crime as stated under

23   section 186.22(a).

24          Accordingly, the Court finds that the state court did not unreasonably apply federal law

25   in evaluating Petitioner's sufficiency of the evidence claim. Based on the Court's independent

26   review of the trial record, it is apparent that Petitioner's challenge to whether the crime was

27   committed in furtherance of the criminal street gang is without merit. The state court analyzed

28   the gang-related evidence in its decision and determined that there was sufficient evidence

1    to support the gang-related conviction. Under <u>Jackson</u> and AEDPA, that decision is entitled

2    to double deference on habeas review. There was no constitutional error, and Petitioner is not

3    entitled to relief with regard to this claim.

4    **B.    Claim Two, Three and Four: Admission of Gang Expert Testimony**

5        Petitioner next claims that the trial court's denial of his objections to expert witness

6    testimony as being unduly prejudicial were in error. Specifically, with regard to claim two,

7    Petitioner objects that evidence relating to two uncharged gang homicides to support a finding

8    that Petitioner was an active gang member was prejudicial. Petitioner, in his third claim for

9    relief, asserts that prejudicial evidence was introduced by the gang expert regarding how a

10   gang member attempted to shoot the gang expert during an arrest. Finally, in Petitioner's

11   fourth claim, Petitioner asserts that prejudicial evidence was admitted linking the Norteno

12   street gang with the Mexican Mafia Prison gang.

13                1.    State Court Opinion

14       The last reasoned state court decision is from the California Court of Appeal, Fifth

15   Appellate District Court's decision confirming Petitioner's conviction. The court explained:

16   II. The Gang Expert's Testimony

17       A. Evidentiary Issues

18       Defendant contends the trial court prejudicially erred in admitting certain
19   portions of the gang expert's testimony and in denying his mistrial motion
     relating to that evidence. Defendant asserts three objections to the gang
20   evidence. First, he says some of the evidence was unduly prejudicial (Evid.
     Code, § 352) because it implicated him in certain murders and planned
21   shootings with which he was not charged. Next, he says the evidence was
     remote in time and, therefore, irrelevant to show that he was currently an active
22   member of the gang. Finally, he contends the expert's repeated mention of the
     Mexican Mafia was unduly prejudicial. Defendant has not established prejudicial
     error.

23

24       The expert, Ceres Police Officer Dennis Perry, testified that defendant
     had spoken with a confidential informant and that this conversation had been
25   recorded by the police. During the conversation, defendant "talk[ed] about
     certain homicides." One was the murder of Jesse "Animal" Carrillo by members
26   of the Vernon Block Boyz, a subset of the Norteno gang. Then he talked about
     the murder of Michael Vails "in a tattoo parlor in Modesto" by a particular
27   Norteno. Then the expert testified that defendant told the informant that two
     Norteno members would be released on parole and "the activities that these
28   gang members were out on the streets … committing, he knew when meetings
     were going to be taking place and so forth." By way of explaining his own
     knowledge that the parolees were Nortenos, the expert testified that he stopped

one of the men a few days after his release on parole and the man pulled a gun and tried to shoot the expert.

This evidence was not offered to prove the murders and the attempted shooting. It was offered to show defendant had intimate knowledge of the activities of the Nortenos. It was admissible for that purpose. (People v. Garcia (2007) 153 Cal.App.4th 1499, 1511.)

Defendant contends, nevertheless, that the evidence was unduly prejudicial under Evidence Code section 352 because "the implication for the jury would have been almost inescapable that appellant was talking about criminal activities in which he was involved, rather than just ca[su]ally sharing second or third-hand news of the underworld." He says the jury would have treated the testimony as evidence of defendant's "bad character or … disposition to commit crime."

The problem with defendant's "almost inescapable" implication from the evidence is that there is no support for it in the record. The expert's testimony did, indeed, convey only that defendant was reporting "news of the underworld," that is, the exploits of his fellow Nortenos. As such, the evidence was not unduly prejudicial and it carried no hidden implication that defendant was directly involved in the crimes.

Defendant's second contention is that, even if this evidence was not unduly prejudicial, it was not relevant in the first place because it did not address the issue on which it was offered-- defendant's current active participation in the gang. The recorded conversation occurred more than a year before the present charges, and the information defendant conveyed to the confidential informant concerned events even more remote. He contends the evidence did not, therefore, constitute "evidence of current knowledge of gang activities."

That evidence, alone, did not prove current active participation, but the evidence did provide context for and corroborate other evidence of current participation-- such as defendant's request, when he was arrested for the present crimes, to be housed in the Norteno wing of the county jail. The evidence was relevant to show he had been an active gang member in the recent past as a predicate for the evidence of his current gang status.

The gang expert mentioned the Mexican Mafia prison gang in conjunction with his explanation of the formation of the Norteno gang as a breakaway group from the Mexican Mafia some 40 years ago. Defendant's third contention is that the court erred in permitting evidence "connecting the Norteno street gang to the notorious Mexican Mafia prison gang." Defendant's complaint seems to be that there was no showing that the Norteno gang, formed in prison, was related to the Norteno criminal street gang at issue in the present case and, therefore, reference to the Mexican Mafia was unduly prejudicial.

Whether the Mexican Mafia prison gang is or is not "notorious" or, at any rate, more notorious than the Nortenos, is neither established in the record on appeal nor a subject for judicial notice. The expert did not testify at all about the activities of the Mexican Mafia within the prison system (or otherwise) except to the extent he said the Mexican Mafia spawned the Nortenos. Since the overall thrust of the expert's testimony in this regard was that the Nortenos violently took control of the "prison environment" from the Mexican Mafia, and that "a lot of people were injured and killed" during this, their mention seems no more or less prejudicial than mention of the Nortenos. In any event, there certainly is nothing

1   talismanic about the name "Mexican Mafia" that causes undue prejudice just by
2   its invocation.

3       It seems the true basis for defendant's contention on appeal is that the
    story of one prison gang taking over from the other is irrelevant to issues of
    criminal street gangs. However, the witness testified that the Norteno prison
4   gang and the Norteno street gang are one and the same, and that a primary
    purpose of the street gang is to generate, through criminal means, money that
5   can be placed "into an account so other members [of the gang] would be able
    to draw and have some benefits while they're inside the correctional facility."
6   Accordingly, the history of the formation of the Norteno prison gang is part of the
    history of the existence of the Norteno criminal street gang at issue in this case.
7   The court did not err in permitting the expert's limited testimony about the
    Mexican Mafia.

8   Arzate, 2009 Cal. App. Unpub. LEXIS 2667, *16-*21.

9       2.      Analysis

10  To the extent that Petitioner contends that gang evidence should have been excluded

11  pursuant to California state evidentiary law, his claim fails because habeas corpus will not lie

12  to correct errors in the interpretation or application of state law. Estelle v. McGuire, 502 U.S.

13  62, 67 (1991).

14  With respect to Petitioner's due process claim, the United States Supreme Court has

15  held that habeas corpus relief should be granted where constitutional errors have rendered

16  a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375 (2000). No Supreme Court

17  precedent has made clear, however, that admission of irrelevant or overly prejudicial evidence

18  can constitute a due process violation warranting habeas corpus relief. See Holley v.

19  Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court has made very few

20  rulings regarding the admission of evidence as a violation of due process. Although the Court

21  has been clear that a writ should be issued when constitutional errors have rendered the trial

22  fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly

23  prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the

24  writ." (citation omitted)).

25  Even assuming that improper admission of evidence under some circumstances rises

26  to the level of a due process violation warranting habeas corpus relief under AEDPA, this is

27  not such a case. Petitioner's claim would fail even under Ninth Circuit precedent, pursuant to

28  which an evidentiary ruling renders a trial so fundamentally unfair as to violate due process

only if "there are *no* permissible inferences the jury may draw from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision."). For the reasons discussed by the state appellate court, there are permissible inferences the jury could have drawn from the gang evidence admitted at trial, specifically Petitioner's knowledge of gang activity to show that he was an active gang member. Petitioner's trial was not rendered fundamentally unfair in violation of due process based on admission of the gang evidence.

In any event, the admission of the challenged evidence did not deny petitioner a fair trial. After a review of the record, this court finds that the trial court's admission of the testimony of the gang expert would not have had a "substantial and injurious effect" on the verdict. Brecht, 507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-96, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). First, the evidence was directly relevant to the charge that Petitioner was an active gang member. Furthermore, significant evidence was presented at trial that Petitioner fired multiple shots at the victim after an argument. Petitioner's girlfriend testified that she witnessed Petitioner and the victim fight, that she took a gun away from Petitioner, and that Petitioner took it back and she heard multiple gunshots shortly thereafter. (Rept'rs Tr. at 43-90.) The victim also testified to the same facts including testifying that he witnessed Petitioner point and shoot the gun at him. (Rprt'rs Tr. at 91-132.)  Accordingly, the jury was provided strong eyewitness testimony regarding the attempted murder. In light of the trial testimony as a whole, there is no reasonable probability the verdict as to the attempted murder charge would have been different if the gang expert's testimony had been excluded.

Petitioner is not entitled to federal habeas corpus relief on claims two, three and four.

### C.   Claim Five: Failure to Provide a Limiting Instruction to the Gang Evidence

Petitioner claims that the trial court's failure to provide a limiting instruction regarding the gang expert testimony violated his constitutional rights. He also asserts that counsel was ineffective for failing to request the instruction.

1.    State Court Opinion

The last reasoned state court decision is from the California Court of Appeal, Fifth

Appellate District Court's decision confirming Petitioner's conviction. The court explained:

B. The Omission of a Limiting Instruction

Defendant concedes that in the ordinary case a trial court has no duty to give the jury an instruction limiting the purposes for which it can consider certain evidence. (See People v. Hernandez (2004) 33 Cal.4th 1040, 1051.) Defendant contends, based on dicta in Hernandez, that the court is required to give such an instruction in some instances. Hernandez states that the court has "recognize[d] a possible exception in 'an occasional extraordinary case in which unprotected evidence … is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose.'" (Id. at pp. 1051-1052.) The Hernandez court held, however, that the case before it did not fall within the "possible exception": "All of the gang evidence [here] was relevant to the gang enhancement, which was a legitimate purpose for the jury to consider it." (Id. at p. 1052.)

Defendant does not cite any case in which reversible error has been found based on the failure to give such an instruction on the court's own motion. In the only case cited by defendant, the court found the gang evidence itself prejudicial despite the fact the court gave a limiting instruction. (See People v. Albarran (2007)149 Cal.App.4th 214, 228.) In Hernandez, the court noted it had previously disapproved other cases finding a sua sponte duty to give a limiting instruction, and it again disapproved other, similar cases. (See People v. Hernandez, supra, 33 Cal.4th at p. 1052, fn. 3.)

As in Hernandez, the evidence in this case was relevant to both the gang enhancement allegations and the substantive gang participation charge. It was clear that the expert's testimony was presented to establish that (1) the Nortenos were, in fact, a criminal street gang and that they, as defined by section 186.22, subdivision (f), were an "ongoing organization" that had "as one of its primary activities the commission of one or more" enumerated crimes, and (2) that defendant knew so much detailed information about the gang's activities that he was a member of the gang. These were core requirements for proof of the prosecution's case and the evidence cannot in any way be considered "minimally relevant."

Further, the evidence was not highly prejudicial since the evidence was somewhat generic and did not attempt to tie defendant to the actual commission of any crimes mentioned in the expert's testimony. In other words, the evidence was not presented as, and was in reality not, "other crimes" evidence used to attack defendant's character. (See Evid. Code, § 1101.)

Whatever may be the scope of the "hypothetical exception" (People v. Farnam (2002) 28 Cal.4th 107, 164) defendant asserts here, the present evidence did not place a duty on the trial court to give a limiting instruction in the absence of a request for such instruction by the defendant.

Defendant contends, in the alternative, that his trial attorney was constitutionally ineffective for failing to request such an instruction. Once again, the circumstances here are similar to those in Hernandez, where the Supreme Court summarized the relevant standards: "'To establish ineffective assistance,

1    defendant' bears the burden of showing, first, that counsel's performance was
     deficient, falling below an objective standard of reasonableness under prevailing
2    professional norms. Second, a defendant must establish that, absent counsel's
     error, it is reasonably probable that the verdict would have been more favorable
3    to him.' [Citation.] 'If the record does not shed light on why counsel acted or
     failed to act in the challenged manner, we must reject the claim on appeal
4    unless counsel was asked for and failed to provide a satisfactory explanation,
     or there simply can be no satisfactory explanation.'" (<u>People v. Hernandez</u>,
5    supra, 33 Cal.4th at pp. 1052-1053.)

6        And as the <u>Hernandez</u> court concluded: "On this record, we cannot say
     that counsel [was] deficient for not requesting a limiting instruction. 'A
7    reasonable attorney may have tactically concluded that the risk of a limiting
     instruction … outweighed the questionable benefits such instruction would
8    provide.'" (<u>People v. Hernandez</u>, supra, 33 Cal.4th at p. 1053.) Here, defendant
     did not seriously contest the fact that the Nortenos are a criminal street gang;
9    instead, he focused on the idea that the evidence did not show he was an active
     member and that the shooting was not shown to be gang related. As such,
10   counsel may well have determined he did not want the jury told exactly how the
     general gang evidence could be considered in determining defendant's motive
11   and intent in the shooting.

12       Defendant has not demonstrated any way in which counsel's failure to
     request the limiting instruction prejudiced defendant. As noted, it is at least as
13   likely that causing the jury to focus on the more generalized gang evidence
     would have led to a finding that the enhancement allegations were true.
14   Defendant has not shown he was deprived of his constitutional right to effective
     assistance of counsel.
15
     <u>Arzate</u>, 2009 Cal. App. Unpub. LEXIS 2667, *21-*25.
16
              2.    <u>Analysis - Failure to Provide the Jury Instruction</u>
17
     A challenge to a jury instruction solely as an error under state law does not state a claim
18
     cognizable in a federal habeas corpus action. <u>See</u> <u>Estelle</u>, 502 U.S. 62, 71-72. To obtain
19
     federal collateral relief for errors in the jury charge, a petitioner must show that the ailing
20
     instruction by itself so infected the entire trial that the resulting conviction violates due process.
21
     <u>See id.</u> at 72. Additionally, the instruction may not be judged in artificial isolation, but must be
22
     considered in the context of the instructions as a whole and the trial record. <u>Id.</u> The court must
23
     evaluate jury instructions in the context of the overall charge to the jury as a component of the
24
     entire trial process. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 169 (1982) (citing <u>Henderson</u>
25
     <u>v. Kibbe</u>, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction
26
     violated the petitioner's right to due process, a petitioner can only obtain relief if the
27
     unconstitutional instruction had a substantial influence on the conviction and thereby resulted
28
     in actual prejudice under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (whether the error

1   had a substantial and injurious effect or influence in determining the jury's verdict.). See

2   Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an

3   erroneous instruction was so prejudicial that it will support a collateral attack on the

4   constitutional validity of a state court's judgment is even greater than the showing required to

5   establish plain error on direct appeal." Id.

6   Petitioner has failed to demonstrate the state courts' determination of this issue was not

7   contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

8   While the jury was not provided a limiting instruction, the state court described how like in

9   Hernandez, the gang testimony was not related to the charged crimes, and it was not likely

10   that the jury would consider the evidence with regard to the attempted murder charge. The

11   other evidence consisted of Petitioner's knowledge the crimes committed by other gang

12   members. The evidence did not consist of Petitioner's prior criminal conduct, and the state

13   court found that the evidence was not highly prejudicial. The state court's determination was

14   reasonable, and that the failure to provide the instruction did not infect the entire trial that the

15   resulting conviction violates due process. See Estelle, 502 U.S. 62, 71-72.

16   Petitioner fails to demonstrate that the state court rejection of his claim "resulted in a

17   decision that was contrary to, or involved an unreasonable application of, clearly established

18   Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

19   The claim should be denied.

20   3.   Analysis - Ineffective Assistance of Counsel

21   The law governing ineffective assistance of counsel claims is clearly established for the

22   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe,

23   151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective

24   assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466

25   U.S. 668 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must

26   show that counsel's performance was deficient, requiring a showing that counsel made errors

27   so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

28   Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's

1   representation fell below an objective standard of reasonableness, and must identify counsel's

2   alleged acts or omissions that were not the result of reasonable professional judgment

3   considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344,

4   1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

5   indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

6   professional assistance. Strickland, 466 U.S. at 687; see also Harrington v. Richter, 131 S. Ct.

7   770, 178 L. Ed. 2d 624 (2011).

8        Second, the petitioner must demonstrate that "there is a reasonable probability that, but

9   for counsel's unprofessional errors, the result ... would have been different," Strickland, 466

10  U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive

11  defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate

12  whether the entire trial was fundamentally unfair or unreliable because of counsel's

13  ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d

14  1456, 1461 (9th Cir. 1994).

15       A court need not determine whether counsel's performance was deficient before

16  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

17  Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

18  deficiency that does not result in prejudice must necessarily fail. However, there are certain

19  instances which are legally presumed to result in prejudice, e.g., where there has been an

20  actual or constructive denial of the assistance of counsel or where the State has interfered

21  with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25

22  (1984).

23       As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard

24  for ineffective assistance of counsel in federal habeas is extremely difficult:

25       The pivotal question is whether the state court's application of the
     Strickland standard was unreasonable. This is different from asking whether
26   defense counsel's performance fell below Strickland's standard. Were that the
     inquiry, the analysis would be no different than if, for example, this Court were
27   adjudicating a Strickland claim on direct review of a criminal conviction in a
     United States district court. Under AEDPA, though, it is a necessary premise
28   that the two questions are different. For purposes of § 2254(d)(1), "an
     unreasonable application of federal law is different from an incorrect application

of federal law." <u>Williams</u>, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

With regard to this claim, the state court held:

Defendant has not demonstrated any way in which counsel's failure to request the limiting instruction prejudiced defendant. As noted, it is at least as likely that causing the jury to focus on the more generalized gang evidence would have led to a finding that the enhancement allegations were true. Defendant has not shown he was deprived of his constitutional right to effective assistance of counsel.

<u>Arzate</u>, 2009 Cal. App. Unpub. LEXIS 2667, *25.

The state court's decision was not an unreasonable determination of Supreme Court law. The state court described how even though Petitioner was found guilty of being an active gang member, he was also charged with active participation in a criminal street gang. The state court provided a rationale for not requesting the limiting instruction as strategy to not

place focus on the gang evidence that was provided, in an attempt to not focus the jury on the enhancements for committing the charged offense in furtherance of a criminal street gang. The strategy described by the state court was reasonable and entitled to deference.

This Court finds that Petitioner did not suffer actual prejudice as a result of the statements in question, or as a result of his attorneys failure to request a redaction or limiting instruction with regards to those statements. Petitioner provides no argument that undermines confidence in the outcome of Petitioner's trial. Furthermore, the state court did not apply any federal law in a manner that was contrary to, or involved an unreasonable application of, the rule in Strickland, or that it based its holding on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, Petitioner's claim on this particular ground is denied.

## D.   Claim Six: Failure to Have an Impartial Jury

Petitioner contends that his motion to declare a mistrial was improperly denied, and that he was not tried by a fair and impartial jury. Specifically, Petitioner asserts that the jurors were scared after an incident occurred where they were photographed in the hallway during a break. Despite the court investigating and questioning the jurors regarding their ability to remain impartial, Petitioner asserts that they were not and that a mistrial was appropriate.

### 1.   State Court Opinion

The last reasoned state court decision is from the California Court of Appeal, Fifth Appellate District Court's decision confirming Petitioner's conviction. The court explained:

IV. Jury Misconduct Issues

A. Additional Facts.

The courtroom in which this case was tried was configured such that the members of the jury had to exit into a common hallway to reach the elevators. On the third day of the seven-day trial, when the jurors left the courtroom, a young woman standing by the elevators appeared to be using her cellular telephone to take pictures of the jurors. Some of the jurors noticed this and, apparently, discussed it among all the jurors the next day. At the afternoon break on the fourth day of trial, one of the jurors brought the matter to the court's attention: "Your honor, I have a problem before we walk out of this door with what happened yesterday." When the court asked that juror to remain behind to discuss the matter, the juror said: "I'm sure the whole jury feels the same way." Another juror said: "We do." The original juror added: "I don't think anybody wants to walk out that door."

The court directed the jury to return to the jury room. After consultation with both counsel, the court went to the door of the jury room and told the jurors that any who wished to could write out on a piece of paper what had happened and what concerns they had, sign the paper, and give it to the bailiff for delivery to the court. Each of the jurors turned in a note. The content ranged from (paraphrasing) "I saw nothing and am not concerned" through "I am concerned because of the woman taking pictures" to "I am concerned because of the nature of this case, gangs, defendant's note-taking, and the presence of people in the hallway outside the courtroom."

After reviewing the notes with counsel, the court stated: "It is a concern to me that there seems to be almost a universal concern for their safety expressed by the jurors, and we can certainly probe further to see if they can set those feelings aside, but I do have some serious concerns, frankly, about whether or not this incident has so tainted this jury panel that we can continue." In the ensuing discussion, defense counsel did not request a mistrial. Counsel suggested additional security measures such as those proposed by the court, and requested the jurors be told the personal information provided to the court had been sealed and was not available to anyone without a court order.

The court decided to send the jury home for the weekend. It advised the jury that the personal information was under seal and there would be additional security both that day and when the jurors returned Monday morning. The court also stated it understood the jurors' concerns and that the matter would be investigated in an effort to determine who was taking the pictures.

The following Monday the court met with counsel, said it had thought about the matter over the weekend, and proposed to admonish the jury in a manner the court shared with counsel. Defense counsel then moved for a mistrial on the basis that the juror notes showed the jurors were now prejudiced against defendant. He contended they could not be "rehabilitated" and that the jurors would not truthfully admit that they no longer could give defendant a fair trial. The court impliedly denied the mistrial motion and stated that it would proceed with the admonition and further inquiries to the jury.

After introductory remarks about additional security for the jurors and the possibility of imposition of sanctions on the person taking the pictures if any juror saw her at the courthouse again, the court stated to the jury: "There is no evidence that defendant was in any way connected with this incident. It would be improper for any of you to assume that defendant is responsible for this incident. You must -- you must put this matter out of your minds and be fair in this case, deciding this case based upon the evidence that is produced in the courtroom and upon the law as I give it to you. Can you all assure me and the parties that you will wait until you hear all of the evidence and the law before deciding any of the issues in this case and that you can be fair and impartial jurors in this case? If you can be, would you please raise your hand?" All of the jurors did so.

The court then sent all of the jurors except juror No. 2 to the jury room. The court explained to juror No. 2 that there was some concern because his written statement to the court had said, "Some of the jurors are scared for retaliation against them because of the defendant is a gang member." The court: "I just want to make sure, sir, that you have not already come to a conclusion and judgment about this case, because that's one of the issues that you will be called upon to decide." Juror No. 2: "All right." The court: "Can you assure all of

us that you have not decided this case and that you will wait until the evidence is in and the law is given to you before reaching your conclusions?" Juror No. 2: "Yeah."

The court rejected defense counsel's request to question juror No. 2 and rejected counsel's request that the court conduct further questioning as to whether the jurors had already discussed the case among themselves. The court stated: "I rejected that request because of the assurances that have already been given to us by [juror No. 2] and the rest of the jurors." The jury returned to the courtroom and trial resumed.

B. Discussion.

Defendant contends the court did not make a sufficient inquiry of the jurors to determine "the facts," that is, to determine whether there are grounds to "discharge one or more of the jurors." Defendant cites People v. Burgener (1986) 41 Cal.3d 505, 519 (Burgener), in support of his claim.

The issue in Burgener was whether a particular juror was intoxicated, as was reported to the court by the jury foreperson. At the request of defense counsel, the court failed to inquire about the issue and permitted the jury to continue its deliberations. Defendant then appealed from his conviction, contending the court had failed in its duty of inquiry. (Burgener, supra, 41 Cal.3d at p. 517.) The Supreme Court agreed the court had a duty to investigate the matter and determine whether the juror should be discharged and that it was error not to do so. (Id. at p. 520.) However, the court concluded the error did not require reversal because the record did not reflect that the juror was in fact incapacitated; the record did not do so because of defense counsel's actions. The court held that, in these circumstances, defendant should be relegated to a showing on habeas corpus that the juror was incapacitated, in much the same way a defendant can establish additional facts for a claim of constitutionally ineffective counsel. (Id. at pp. 521-522.)

We have similar concerns in the present case. When the matter was first brought to the court's attention and the court stated an inclination to discharge the jury, defense counsel sought to minimize the issue, contending, "[J]urors sometimes do, I think, sometimes, you know, unreasonably expect a certain amount of anonymity to their process and all. And all I can tell you is my position is freedom does not come without some risk and that applies to all citizens."FN6

FN6 One can well imagine counsel making a calculated judgment that, even if his client was not behind the incident, if the jury had been intimidated by the picture-taking, it might be reluctant to convict defendant.

By Monday morning, after an opportunity to confer further with his client and, possibly, being reminded that defendant thought the witnesses would not show up for the current trial and perhaps they would not show up if there had to be a retrial, counsel moved for a mistrial.

In any event, even if there are other, wholly innocent, explanations for counsel's change of direction, one thing is indisputable: counsel did not request the dismissal of particular jurors who might have been prejudiced by the hallway encounter. His only request was that the trial end, not that it continue with a more unbiased jury. His only request to the court to conduct a further inquiry was in the context of the mistrial motion, not in the context of a particularized objection to any individual juror.

1

2

3

4

5

6

> We are satisfied that the trial court here conducted the proper inquiry, addressed the jurors' concerns, and determined the jury would be able to decide the case based on the evidence. Its admonition to the jury further ensured this result. (See People v. Harris (2008) 43 Cal.4th 1269, 1304-1305.) The record contains nothing that leads to a different conclusion: the jury was able to consider the evidence in such a manner that it determined the shooting offenses were not gang related, an indication the jurors had not been prejudiced by the camera incident. As in Burgener, any showing of prejudice that conflicts with the state of the record should be established through habeas corpus proceedings. (See Burgener, supra, 41 Cal.3d at pp. 521-522.)

Arzate, 2009 Cal. App. Unpub. LEXIS 2667, *31-*39.

7

8

>> 2.     Analysis

9

10

The Fourteenth Amendment of the United States Constitution safeguards a criminal

11

defendant's Sixth Amendment right to be tried by a panel of impartial and indifferent jurors.

12

See Irvin v. Dowd, 366 U.S. 717, 722 (1961); see also Hayes v. Ayers, 632 F.3d 500, 507 (9th

13

Cir. 2011) (quoting Irvin, 366 U.S. at 722) ("The Sixth Amendment right to a jury trial

14

'guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.'") "It

15

is not required, however, that the jurors be totally ignorant of the facts and issues involved."

16

Irvin, 366 U.S. at 722-23 (finding that mere existence of preconceived notion of guilt or

17

innocence of accused is insufficient by itself to rebut the presumption that a prospective juror

18

is impartial). Rather, due process requires that a defendant be tried by "a jury capable and

19

willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217

20

(1982); see also Fields v. Brown, 503 F.3d 755, 766 (9th Cir 2007). Jurors are objectionable

21

if they have formed such strong and deep impressions that their minds are closed against

22

conflicting testimony. See Irvin, 366 U.S. at 722 n.3. The presence of even one biased juror

23

deprives a defendant of the right to an impartial jury. Dyer v. Calderon, 151 F.3d 970, 973 (9th

24

Cir. 1998).

25

The Sixth Amendment also requires the jury verdict be based entirely on the evidence

26

produced at trial. Turner v. Louisiana, 379 U.S. 466, 472-473 (1965). When presented with

27

allegations of jury misconduct or juror bias, the trial court is required to determine what

28

transpired, the impact on the jurors, and whether or not what transpired was prejudicial.

Remmer v. United States, 347 U.S. 227, 229-230 (1954); Dyer, 151 F.3d at 974 ("A court

confronted with a colorable claim of juror bias must undertake an investigation of the relevant

facts and circumstances."). As the Supreme Court noted:

> [T]ampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

Remmer, 347 U.S. at 229 (citing Mattox v. United States, 146 U.S. 140, 148-150 (1892)); see also Xiong v. Felker, 681 F.3d 1067, 1076 (9th Cir. 2012).

The appellate court ultimately concluded that the trial court "conducted the proper inquiry, addressed the jurors' concerns, and determined the jury would be able to decide the case based on the evidence." Arzate, 2009 Cal. App. Unpub. LEXIS 2667, *38-*39. Further, the appellate court found that the trial court's admonition to the jury further ensured that the jury would decide the case based on the evidence. Id. The Court finds the state court's decision to be an objectively reasonable application of Supreme Court precedents. The trial court in this case conducted the hearing required by Remmer with all counsel present and participating. The trial court examined the jurors's answers and demeanor for signs of potential prejudice stemming from hallway incident in which several of the jurors may have been photographed and in assessing the juror's ability to render an impartial decision on the evidence. Thus, the appellate court's finding that Petitioner's constitutional rights were not offended when the trial court denied Petitioner's motion for mistrial was not an objectively unreasonable application of Supreme Court precedents and Petitioner is not entitled to habeas corpus relief.

### E.    Claim Seven: Denial of Petitioner's Marsden Motion

Petitioner's seventh claim alleges the trial court committed prejudicial error by denying Petitioner's pretrial Marsden motion (see People v. Marsden, 2 Cal.3d 118 (1970) (recognizing that a California criminal defendant may move to have his court-appointed attorney substituted for different counsel if the appointed attorney is rendering inadequate assistance)), thus violating Petitioner's right of counsel as guaranteed by the Sixth and Fourteenth Amendments. Respondent contends Petitioner is incorrect and the state court reasonably rejected the claim. This claim was rejected on direct appeal.

1.    State Court Opinion

The appellate court issued the last reasoned decision, as follows:

I. Marsden Motion

A. Introduction

"People v. Marsden (1970) 2 Cal.3d 118 … established the right of a defendant personally to raise the issue of ineffective assistance [of counsel] by means of a motion to discharge his or her attorney and appoint a new one. When defendant requests a change of counsel, the court must allow defendant an opportunity to explain the reasons for his or her dissatisfaction with counsel. … The defendant is entitled to relief on a showing that the first appointed attorney is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 222, p. 347, italics omitted.)

In this case, defendant made such a motion, and the court conducted a hearing in which defendant was permitted to explain the reasons for his dissatisfaction with counsel. The court denied the motion, concluding that counsel was "doing a fair job under the circumstances" and that there had not "been such a complete breakdown [in defendant's relationship with counsel] that it would make it impossible for Counsel to continue to effectively represent the defendant."

Defendant contends on appeal that "the trial court's Marsden hearing inquiry was inadequate. Although [defendant] expressed numerous and various complaints about [counsel], the trial court made an inadequate inquiry into some of those complaints and altogether ignored others."

B. Factual Context

Before we address defendant's particular claims of trial court error, we must establish the context for the Marsden motion. While there was some conflict about certain facts, substantial evidence supported the following facts impliedly found by the trial court.

Defendant had originally been represented by other appointed counsel. Defendant filed a Marsden motion against that attorney a week before his original trial date. He alleged counsel had not prepared for the trial and had failed to provide documents to defendant that might show counsel had a conflict of interest. Counsel stated that there was not much preparation to be done, in his understanding of the case, but he agreed that he and defendant had been totally unable to communicate throughout his representation. The court granted the motion and appointed William Miller to represent defendant.

On the Friday before the rescheduled trial was to begin on Monday, Miller met with defendant. Miller told defendant he had just finished a murder trial and that there was no possibility Miller could be ready to go to trial as scheduled. He told defendant it was necessary to seek a continuance of the trial. Defendant told Miller he wanted to keep the trial date because the victim would not show up to testify against him and there was no other evidence he had committed the crime. Miller advised defendant that this was a very dangerous choice and that "it had been my experience that no matter what victims, witnesses or anybody

else said, people had a way of showing up at trial and testifying once they had received the subpoena." Defendant's "decision was to continue to go to trial." Miller reiterated to the court that he was "not prepared to do this trial" and was just "winging it."

With that context in mind, we turn to the trial itself.

The witnesses appeared as scheduled. While two of the witnesses testified they did not see who fired the gun, Joel Moncibaiz testified he saw defendant point and fire the gun, and that defendant continued to fire as Joel ran away.

On the third or fourth day of trial (the dates on the table of contents for the reporter's transcript and the cover page of the separate, confidential reporter's transcript of the hearing are in conflict) but, in any event, after Joel Moncibaiz had completed his testimony, defendant orally notified the court he wanted to have his attorney replaced. The court convened a <u>Marsden</u> hearing outside the presence of the prosecutor and the jury.

The court began the hearing by asking defendant why he wanted a new attorney. Defendant replied, "I've lost all faith, if there was any, in my counsel." He said counsel had not filed a "<u>Pitchess</u> motion, a <u>Brady</u> motion, just different things, Your Honor." The court invited defendant to explain. Defendant replied: "As far as the so-called victim, you know, he came in here. You could tell he ain't slept in about two weeks straight, drug addict. You know what I'm saying? … [P] And, you know, as far as my counsel, I just -- I have no faith in him, Your Honor." The court pointed out that "your counsel wasn't testifying" and that the jury would be able to judge the witness's credibility: "I can't say what impact he made with the jury."

The court then asked if there was "anything in addition to these two motions that you say your attorney has not done that you wanted him to do?" Defendant said Miller "doesn't seem ready" to conduct the trial. Miller then explained his interaction with defendant the previous Friday, recounted above, and said defendant was right, he, Miller, was "not prepared to do this trial" and had "just been winging it as we go." He said he had "given my client the best representation I can under the circumstances."

The court asked defendant if he had anything else. Defendant said he had written notes to counsel during trial and that counsel did not ask the questions defendant proposed in the notes. In addition, defendant said Miller had not stressed to him how unprepared Miller was for trial and how necessary a continuance was. In response, counsel reiterated, in essence, that he had clearly stressed to defendant that they should not go to trial. At Miller's suggestion, the court included a copy of defendant's notes from that day as an exhibit in the <u>Marsden</u> hearing. The court determined from Miller that notes from the previous day had been discarded.

The court denied the Marsden motion.

C. Discussion

It is generally true that a Marsden motion can be made at any time, since a defendant is entitled to competent representation at all times. (5 Witkin & Epstein, Cal. Criminal Law, supra, § 223, p. 349.) Nevertheless, a defendant is not entitled to use such a motion to interfere with the orderly progress of a trial

or to otherwise subvert the processes of justice; a <u>Marsden</u> motion can be denied for that reason alone. (<u>See, e.g.</u>, <u>People v. Roldan</u> (2005) 35 Cal.4th 646, 682 ["a criminal defendant cannot willfully refuse to cooperate with his appointed attorney, thereby possibly hampering his own defense, and then claim he is entitled to a new attorney because counsel has not been effective"]; <u>People v. Trujillo</u> (1984) 154 Cal.App.3d 1077, 1087 ["in view of (the defendant's) deliberate attempt to manipulate the court system, the court did not abuse its discretion in refusing to appoint a new attorney on the morning of the day set" for trial]; <u>see also</u> <u>People v. Lewis</u> (2006) 39 Cal.4th 970, 1004 ["Indeed, given the timing and nature of the motion, it appears to have been made primarily to delay the trial."].)

In the present case, defendant told counsel the victim would not appear for trial and counsel did not need time to prepare for trial. Having made that choice, and having been wrong about appearance by the victim, defendant was not entitled to another trial so that he could try again to dissuade the victim from testifying. While it is conceivable that a defendant in these circumstances might still be able to show that counsel was prejudicially ineffective in some way not related to defendant's deliberate choice not to seek a continuance, no such showing was made in the <u>Marsden</u> hearing and defendant does not contend on appeal that counsel was constitutionally ineffective.FN3 Accordingly, we reject defendant's claims that counsel did not come to visit him in jail, was forgetful, and was unprepared for trial, since all of those complaints are merely aspects of defendant's determination that counsel did not need to be prepared because the victim would not appear for trial.

FN3 Defendant makes limited, alternative, claims that counsel was ineffective in pursuing particular motions and instructions in the event we determine certain trial court error was waived. We discuss these claims in connection with the primary claims of trial court error in subsequent sections of this opinion. The point here is that defendant does not contend counsel actually was constitutionally ineffective as outlined in his <u>Marsden</u> motion, pursuant to the standards set forth in <u>People v. Ledesma</u> (1987) 43 Cal.3d 171, 215-218. In violation of the requirement that each contention be stated under a separate heading summarizing the point (Cal. Rules of Court, rule 8.204(a)(1)(B)), appellant apparently contends counsel was ineffective for failing to request a continuance over defendant's objection. He does not, however, attempt to show that a more favorable result was reasonably probable but for counsel's actions. (<u>See</u> <u>Strickland v. Washington</u> (1984) 466 U.S. 668, 687-688.)

Further, we reject defendant's claim that the court denied the <u>Marsden</u> motion based on its observation of Miller's courtroom actions or the fact that Miller was doing a better job than defendant would have if self-represented: The court's comments were intended to convey the idea that even though defendant created the unfavorable circumstances, his trial had not become a farce or a sham. The court was correct; there has been no showing that defendant would have received a more favorable verdict even if defendant had not prevented Miller from more fully preparing for trial.

Defendant contends, in addition, that the trial court failed adequately to inquire about several of defendant's allegations at the <u>Marsden</u> hearing. Accordingly, he says, he was not given the opportunity to show counsel's ineffectiveness. Defendant says, "The trial court completely ignored appellant's complaint that Mr. Miller had failed to file appellant's requested <u>Brady</u> and <u>Pitchess</u> motions. … The trial court asked no follow-up questions of appellant regarding this complaint."

The record presents a different picture. Defendant told the trial court, "Well, it's just as far as the Pitchess motion, a Brady motion, just different things, Your Honor." The court responded: "You feel he should have filed a Pitchess motion and a Brady motion?" Defendant: "Yes, your Honor. As far as the so-called victim, you know, he came in here. You could tell he ain't slept in about two weeks straight, drug addict. You know what I'm saying?"

Motions pursuant to Pitchess v. Superior Court (1974) 11 Cal.3d 531 and Brady v. Maryland (1963) 373 U.S. 83 seek exculpatory evidence in the possession of the police and the prosecutor. A Pitchess motion seeks records of past misconduct by police officers involved in the case; a Brady motion seeks exculpatory evidence more generally.

In context, then, the court reasonably (and, it appears, correctly) concluded defendant wanted Miller to have sought from the prosecutor information about drug abuse by Joel Moncibaiz that might have undermined his credibility as a prosecution witness. The court concluded witness credibility was a matter for the jury and, impliedly, that information about the witness's drug use, if any, would not alter the jury's ability to determine credibility.

Accordingly, we conclude the court made an adequate inquiry, "sufficient to ascertain whether counsel is in fact rendering effective assistance." (People v. Eastman (2007) 146 Cal.App.4th 688, 695; see People v. Valdez (2004) 32 Cal.4th 73, 96.) Defendant has not shown that the court abused its discretion in failing to appoint substitute counsel on the basis of the failure to file motions for impeachment evidence concerning the victim. (Ibid.)

Finally, defendant contends the trial court failed adequately to inquire into defendant's claim that "there was an irreconcilable conflict" between Miller and himself. In addition to the issues caused by defendant's refusal to agree to a continuance, he points to the trial court's inadequate inquiry into his allegation that Miller ignored notes defendant had made "so he could have asked certain witnesses that have been on the stand" questions based on the notes. Rather than inquire further into that matter, the court directed counsel to consult the notes if defendant provided them. "I'm not telling you you have to do what he asks you to ask, but at least you'll read them and consider them." Thus, while the trial court did not find the relationship between defendant and Miller was irretrievably broken, the court did properly exercise its discretion to prevent a future deterioration of that relationship.FN4 No error appears in its having done so.

FN4 It appears counsel was not ignoring defendant's notes, in any event. In recross-examination of Joel Moncibaiz, counsel asked which hand defendant used to hold the gun (Moncibaiz said, "His right."), apparently in response to defendant's note, which stated: "Was the socalled gun in my right or left hand - I'm lefthanded." (Underlining in original.) Recross-examination occurred before the court heard the Marsden motion.

Arzate, 2009 Cal. App. Unpub. LEXIS 2667, at *9-*16.

Under the Sixth Amendment to the United States Constitution, an indigent state prisoner is entitled to the assistance of counsel at every critical stage of the proceedings. Gideon v. Wainwright, 372 U.S. 335 (1963). Such assistance must be effective and

competent. Strickland, 466 U.S. at 668. In addition, the Sixth Amendment guarantees a defendant a right to conflict-free representation. See Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir. 1994). However, indigent defendants do not have a constitutional right to be represented by their counsel of choice. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 625 (1989); United States v. Rewald, 889 F.2d 836, 856 (9th Cir. 1989) (recognizing that the right to choice of counsel is limited to defendants who can retain counsel). Nor does the Sixth Amendment guarantee a "meaningful attorney-client relationship." Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (internal quotation marks omitted). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). "[T]here is no automatic right to a substitution of counsel simply because the defendant informs the trial court that he is dissatisfied with appointed counsel's performance." Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir. 1990).

In reviewing a federal habeas claim based on the denial of a motion for substitution of counsel, "the ultimate constitutional question the federal courts must answer" is whether the state trial court's disposition of the motion violated a petitioner's constitutional rights because the conflict between the petitioner and appointed counsel "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000). As explained by the Ninth Circuit:

> [t]he test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the nature and extent of the conflict, to determine whether the conflict deprived the defendant of representation guaranteed by the Sixth Amendment; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).

Here, the state court's decision denying Petitioner's Marsden claim was neither contrary to nor an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d). As set forth above, the trial court held a thorough and fair hearing on Petitioner's motion for

substitute counsel. During Petitioner's <u>Marsden</u> hearing, the trial court inquired regarding why Petitioner was requesting new counsel. Petitioner first claimed that counsel was unprepared. Counsel and the court acknowledged that he was unprepared in light of the fact he had  just finishing a murder trial. However, counsel strongly recommended that Petitioner continue the matter to allow time for counsel to prepare. Despite counsel's advice, Petitioner did not agree to continue the trial.

Petitioner also claimed that counsel did not file motions to obtain evidence of alleged drug abuse by Joel Moncibaiz. While it is clear that counsel did not take such actions, the court held that the jury could determine Moncibaiz's credibility regardless and that there was no showing that Petitioner was prejudiced.

Upon review, there was no evidence of antagonism or serious breakdown to suggest that the court needed to inquire more thoroughly than it did. <u>United States v. Reyes-Bosque</u>, 596 F.3d 1017, 1034 (9th Cir. 2010); <u>United States v. Adelzo-Gonzalez</u>, 268 F.3d 772, 777 (9th Cir. 2001). Although Petitioner was unhappy with his defense, it appears that the communication between himself and counsel was satisfactory. It is true that "a defendant's Sixth Amendment right to counsel is violated if the defendant is unable to communicate with his or her counsel during key trial preparation times." <u>Daniels</u>, 428 F.3d at 1197.

Breakdowns in the attorney-client relationship that rise to the level of a conflict of interest warranting substitution of counsel have been marked by (1) "a complete communications breakdown," <u>see</u> <u>United States v. Nguyen</u>, 262 F.3d 998, 1004-05 (9th Cir. 2001); (2) an attorney's "open opposition" to his client, including "bad language and threats" to provide substandard performance if the client persisted in demanding to go to trial, that left the defendant "effectively unrepresented," <u>United States v. Adelzo-Gonzalez</u>, 268 F.3d 772, 779 (9th Cir. 2001); or (3) "an atmosphere of mistrust, misgivings and irreconcilable differences." <u>United States v. Moore</u>, 159 F.3d 1154, 1159 (9th Cir. 1998). Although in this case Petitioner may have been dissatisfied with some aspects of his defense, the hearing on the motion reflected that there was no irreconcilable conflict warranting removal of counsel. <u>See</u> <u>Plumlee v. Masto</u>, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) ("Petitioner has cited

no Supreme Court case — and we are not aware of any — that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust"). "The Supreme Court has held that a defendant is constitutionally entitled to a lawyer who is free of conflicts of interest and who can act as a loyal advocate." Id. at 1211. During the hearing, Petitioner stated that counsel was unprepared and ignored the notes that Petitioner gave him to guide his questioning of witnesses. While the court implicitly acknowledged that counsel was unprepared, the court ordered counsel to be provided Petitioner's notes so that he would have available the questions that Petitioner would ask of the witnesses.

While Petitioner was not pleased with the performance of counsel, there was no evidence of a complete communications breakdown that would be considered a conflict of interest. After independently reviewing the record, the undersigned finds that the state court's denial of this claim was not an unreasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

**V.     ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) Petitioner's petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (in order to obtain a COA, petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 529 U.S. at 484. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of

1   a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of

2   appealability.

3

4   IT IS SO ORDERED.

5   Dated:   October 31, 2012          /s/   *Michael J. Seng*

                                         UNITED STATES MAGISTRATE JUDGE